United States District Court

District of Maryland

FILED ___ ENTERED
LOGGED ___ RECEIVED

SEP 11 2023

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Kenneth J. Warn,

   Plaintiff

        v.

Janay Sears

   Defendant

**Plaintiff's Complaint**

PJM 23 CV 2466

### Parties

1. The Plaintiff, Kenneth J. Warn, is a resident of Silver Spring, Maryland and a citizen of the state of Maryland.
2. The Defendant, Janay Sears, AKA Janay St. Clair, AKA Janey Sears, AKA Janay Sears-St. Clair has absconded with the Plaintiff's assets. She maintains a mailing address at: 1400 L St., NW Lobby 2-#34642, Washington, DC 20043. The Defendant is a citizen of the District of Columbia.

### Jurisdiction and Venue

3. Jurisdiction in this cause of action is premised on diversity of citizenship, 28 U.S.C. 1332, in that the parties are citizens of different states and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.
4. Venue is proper in the District of Maryland.

### Facts

5. In August 2021, the Defendant began taking funds, via bank drafts, wires, and cash, from the Plaintiff, for the purpose of what the Defendant described as a "larger entity" of several other investing individuals, including herself. The main, if not exclusive stock, in which the funds were to be invested was Pfizer, Inc.
6. A "Financial Agreement Between Parties" was signed by the parties dated August 10, 2021 which memorialized the start of the Plaintiff's investments. The financial agreement was supplemented by various oral agreements between the Plaintiff and the Defendant. These agreements required the Defendant to protect Plaintiff's funds, invest same in a manner consistent with Plaintiff's financial objectives and risk tolerance and that Defendant would provide periodic and regular

    written reports, identifying the location of Plaintiff's accounts and which would depict his current balances and all transactions within his account. See Exhibit 1 attached hereto.
7. The Plaintiff commenced investing with a check for $20,000.000, dated August 10, 2021.
8. Over the course of the ensuing months, with the urging of the Defendant, the Plaintiff continued to make additional investments, including many checks that he was directed to make payable to "Janey I. Sears." Copies of the checks, credit card charges, and cash payments are attached hereto in Exhibit 1.
9. The Plaintiff was assured by the Defendant that he would have the ability to withdraw funds on a quarterly basis, but he has been unable to do so to date.
10. On July 22, 2022, the parties signed an "Amendment to the Agreement Between Parties," although in this document, the Defendant listed herself as Janey Sears-St. Clair, instead of Janay St. Clair, which was used in the first document. A copy of the said agreement can be found in Exhibit 1.
11. During the 2021-2022 time period, the Defendant urged the Plaintiff to use the equity in his residence to increase his investment amounts, by taking out a home equity line of credit and refinancing his home at its appreciated appraisal value. The Plaintiff indicated that he would never have done so without the Defendant's insistence that increased contributions would guarantee a higher level of investment returns.
12. The Defendant, in fact, while pressuring the Plaintiff to contribute more and more funds, told him that he could expect a three-fold return on his investment during the 2021-2023 time period, and told him to expect a total principal of approximately 1.2 to 1.5 million dollars.
13. The Defendant told the Plaintiff that she had invested her own funds into this undocumented investment, in the amount of $600,000.00 or more, but she never documented this investment.
14. The Defendant claimed to the Plaintiff that the investment pool totaled in the tens of millions of dollars and that one of her sisters helped manage the investment pool. It is noted that the Plaintiff was advised by the Defendant that her sister, Aurora Quirk, is employed by the investment firm of Goldman Sachs.
15. Eventually, by May 2, 2023, after 21 months, the Plaintiff had invested a total of $475,000.00. All of the funds were given directly to the Defendant. She has not returned any of the money to date.
16. Throughout the last 21 months, when the Plaintiff questioned the Defendant about the fact that he never received any type of investment account statements or confirmations, the Defendant put him off by saying that he would eventually receive statements, but the investment account needed to be "perfected" first. He never received anything and the Defendant never explained what she meant by the word "perfected."
17. When the Plaintiff asked who he could contact as a point of contact for the investment funds, the Defendant kept stating "I am your point of contact."
18. The Plaintiff was promised "quarterly earnings" from the so-called investment fund, but no earnings were ever forthcoming.
19. At the urging and cajoling of the Defendant, the Plaintiff continued to strongly suggest ways for the Plaintiff to invest more and more of his funds. He used about $20,000.00 from an IRA early withdrawal and withdrew the entirety of his previous employer's Thrift Savings Account, which totaled about $55,000.00 after taxes, to add funds to the Defendant's "investment fund."

20. Again, at the urging of the Defendant, the Plaintiff invested funds from credit union loans and credit card cash advances, after being convinced by the Defendant that these actions were all for his "benefit," even stating to the Plaintiff that she knew individuals who had made similar financial moves and invested this way and "made out big." The Plaintiff didn't challenge the Defendant in large part due to the fact that the Plaintiff and Defendant were maintaining a romantic relationship and that she claimed she received an MBA from Harvard Business School, and said she had studied law at Harvard as well. Defendant also claimed to be owner and CEO of a business "Road Ships USA," which she claimed employs approximately 25 individuals and provides services in transportation logistics and nationwide roadside assistance to several major trucking companies made possible in part through construction and development of a new "data center" on land she purchased in rural West Virginia, west of Blacksburg, Virginia. Of course, all of her claims are unsubstantiated, and she could never back up anything she said about her past with documents or other proof. On information and belief, Plaintiff alleges that none of Defendant's representations were true and that all of same were knowingly false.
21. Throughout the nearly two years of taking the Plaintiff's money for a so-called investment, the Defendant continually pushed the Plaintiff to get his total account contributions to the $500,000.00 level, indicating to him that he would receive a $25,000.00 "bonus" when added to his total $475,000.00 contribution. He never received any such bonus.
22. In addition to these direct investment contributions, the Defendant charged the Plaintiff fees and penalties amounting to an extra $4,500.00. She also charged repairs for her car on the Plaintiff's credit card in the amount of $4,345.10 and never reimbursed him. As well, a promotional check issued by of Plaintiff's credit cards and cashed by Defendant cost Plaintiff $512 in transaction fees.
23. In total, the Defendant has taken a total of $484,357.10 from the Plaintiff. The Defendant has never provided any proof that any of the funds given to her were ever invested in anything. As of the date of this complaint, the balance of the principal and interest is due to the Plaintiff. The Defendant's representations to the Plaintiff were knowingly false and were made to deceive Plaintiff into parting with his money in what was no more than an investment scam. The Plaintiff relied on the honesty of Defendant's representations.

## Count 1

24. The Plaintiff hereby references the allegations made in paragraphs 5 through 23, inclusive and incorporates same into count 1.
25. The Defendant, having used the funds for her own purposes rather than for the intended purposes of investment and savings for the Plaintiff, has perpetrated a fraud and has breached the contract, written and oral with Plaintiff.
26. The Defendant has caused severe economic damage upon the Plaintiff.

Wherefore: The Plaintiff, Kenneth J. Warn, demands judgment against the Defendant in the amount of $484,357.10 plus interest, costs, and reasonable legal fees on Count 1 of the complaint.

## Count 2

27. The Plaintiff hereby references the allegations made in paragraphs 5 through 23, inclusive and incorporates same into count 2.

28. The representations made by Defendant were knowingly false and were intended for the purpose and with the intent of causing Plaintiff to part with his money.
29. The Defendant never intended to invest Plaintiff's money but rather she intended to scam Plaintiff and steal his money.
30. Defendant breached her obligation of trust with Plaintiff to convince him to part with his money.
31. The Defendant's actions constitute the tort of fraudulent misrepresentations.

Wherefore: The Plaintiff, Kenneth J. Warn, demands judgment against the Defendant in the amount of $484,357.10 plus interest, costs, and reasonable legal fees on Count 2 of the complaint.

Count 3

32. The Plaintiff hereby references the allegations made in paragraphs 5 through 23, inclusive and incorporates same into count 3.
33. As a result of his relationship with Defendant, Defendant had a fiduciary duty to the Plaintiff to safeguard his money, invest is wisely and provide Plaintiff with a financial information on demand as to allow Plaintiff to redeem his investments as he saw fit.
34. Defendant breached these obligations and therefore violated the fiduciary duty causing great economic harm to Plaintiff.

Wherefore: The Plaintiff, Kenneth J. Warn, demands judgment against the Defendant in the amount of $484,357.10 plus interest, costs, and reasonable legal fees on Count 3 of the complaint.

Respectfully submitted,
The Plaintiff

Kenneth J. Warn, pro se