## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KENNETH L. WARN,

    Plaintiff, Counterclaim Defendant,

    v.

JANAY SEARS,

    Defendant, Counterclaim Plaintiff.

Civil No. **23-2466 PJM**

### MEMORANDUM OPINION

Janay Sears has filed a *pro se* Motion to Dismiss (ECF No. 6) Kenneth L. Warn's *pro se* Amended Complaint. Warn has not filed a response in opposition, but he has filed a Motion to Deem Defendant Served (ECF No. 9). Upon review of the parties' submissions, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons that follow, the Court will **GRANT** Warn's Motion to Deem Defendant Served (ECF No. 9) and **DENY** Sears' Motion to Dismiss (ECF No. 6).

### BACKGROUND[1]

Warn alleges that in August 2021, he and Sears entered a "Financial Agreement Between Parties" (the "Agreement"), whereby Warn would provide funds to Sears for her to invest in a "larger entity" of other investing individuals. ECF No. 4 ¶¶ 5-6. Warn states that the Agreement contemplated that Sears would "protect" his funds, "invest same in a manner consistent with" his

---

[1] As will be explained below, for the purposes of resolving a motion to dismiss, the Court must accept all well-pled facts in a complaint as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted). Accordingly, this Background section recounts the facts as they appear in Warn's Amended Complaint. At this stage, the Court does not and cannot express any view as to whether the facts alleged in the Amended Complaint are true.

1

financial objectives and risk tolerance, and provide "periodic and regular written reports, identifying the location" of his accounts and balances. *Id.* ¶ 6. Warn began his investments with Sears with a $200,000 check. *Id.* ¶ 7.

Apparently, Warn continued to make "additional investments," which "supplemented" the original Agreement over the course of the following months. *See id.* ¶¶ 6, 8. In July 2022, the parties purported to make a written amendment to the Agreement, wherein Sears identified herself as Janey Sears-St. Clair, which differs from the name she specified (Janay St. Clair) in the original Agreement. *See id.* ¶ 10.

At Sears' urging, Warn later took out a home equity line of credit and refinanced his home to obtain additional funds to invest with Sears. *See id.* ¶ 11. At one point, Sears allegedly told Warn that he could expect a "three-fold" return on his investments by 2023, and that he should expect a "total principal of approximately" $1.2 million to $1.5 million. *Id.* ¶ 12. Sears apparently also told Warn that she had invested her own money in the "larger entity" investment pool, *id.* ¶ 13, and that her sister (who supposedly works for Goldman Sachs) "helped manage the investment pool." *Id.* ¶ 14.

By May 2023, Warn had given Sears approximately $475,000. *See id.* ¶ 15. This amount apparently included $20,000 from an early withdrawal of Warn's retirement account, and a $55,000 withdrawal from his prior employer's "Thrift Savings Account." *See id.* ¶ 19. As his investments increased, Sears apparently promised that Warn would receive a $25,000 "bonus" if the total sum he provided exceeded $500,000. *See id.* ¶ 21.

Sears has not returned the money despite repeated requests. *See id.* ¶ 15. Nor has she provided any documentation that the funds were actually invested or provided records of Warn's accounts and balances, as contemplated by the Agreement. *See id.* ¶ 16. Nor did she deliver the

"quarterly earnings" promised in the Agreement. *Id.* ¶ 17. When asked for the contact information for an individual managing the investment pool, Sears allegedly told Warn that she was his point of contact. *See id.*

Throughout this period of time, Warn and Sears were apparently also engaged in a romantic relationship. *See id.* ¶ 20. Warn claims that his decision to invest with Sears was in part attributable to their relationship. *See id.* Sears also apparently claimed to have received a business degree from Harvard University, in addition to studying law at Harvard. *See id.* Warn believed that he could invest with Sears because she represented that she ran a successful trucking-logistics business called "Road Ships USA," which is based out of West Virginia. *See id.*

Beyond receiving $475,000 for investment purposes, Sears has allegedly charged Warn $4,500 in fees, charged repairs for her car on his credit card totaling $4,345.10, and cashed a "promotional check" from Warn's credit card account totaling $512 in transaction fees. *See id.* ¶ 22.

On September 11, 2023, Warn filed a *pro se* Complaint in this Court. *See* ECF No. 1. He later filed his *pro se* Amended Complaint on September 28, 2023. *See* ECF No. 4. In his Amended Complaint, Warn asserts three causes of action against Sears: Count I – Breach of Contract; Count II – Fraudulent Misrepresentations; and Count III – Breach of Fiduciary Duty. He requests that the Court award him $484,357.10 in damages, which would compensate him for the money he gave to Sears. *See* ECF No. 4 ¶ 23.[2] Warn's Amended Complaint premises the Court's jurisdiction

---

[2] Warn's Amended Complaint apparently did not change the substance of his allegations or claims—rather, he has embedded what were separate exhibits to his Original Complaint into a single PDF file with his Amended Complaint. These exhibits contain unredacted financial account information. Accordingly, the Court will **ORDER** the Clerk to seal both Warn's Amended Complaint (ECF No. 4) and the exhibits to his Original Complaint (ECF Nos. 1-1, 1-2). *See* Fed. R. Civ. P. 5.2(d) ("The court may order that a filing be made under seal without redaction."). Should either of the parties wish to file further financial records to support their respective positions in the future, the parties are advised to first consult Rule 5.2 in its entirety for guidance on how to protect this sensitive information.

on the grounds of diversity of citizenship under 28 U.S.C. § 1332—he is a citizen of Maryland, and Sears is a citizen of Washington, D.C. *See* ECF No. 4.

On November 20, 2023, despite no record that she was properly served with Warn's Complaint and summons, Sears filed the present *pro se* Motion to Dismiss (ECF No. 6) Warn's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] She concurrently filed what she describes as a "Pre-Service Answer" (ECF No. 7). Sears' Answer asserts three counterclaims against Warn: Count I – Breach of Contract; Count II – Quantum Meruit; and Count III – Promissory Estoppel.[4] Sears seeks $600,000 in damages from Warn. *See* ECF No. 7 at 5.

On December 7, 2023, Warn filed a Motion to Deem Defendant Served (ECF No. 9).[5]

## MOTION TO DISMISS

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

---

[3] As will be explained, Sears' Motion is somewhat scattershot, and as noted above (*see, e.g.*, Note 2), Warn has failed to comply with certain procedural requirements for prosecuting a civil action in federal court. Although the parties are entitled to proceed without legal representation if they so choose, and the Court is obligated to "construe[], administer[], and employ[]" the Federal Rules of Civil Procedure "to secure the just, speedy and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court **_strongly encourages_** the parties to retain counsel in these proceedings.

[4] Under the "prayer" section of her Answer, Sears suggests that Warn may have committed "domestic assault and battery" when the two were romantically involved. *See* ECF No. 7 at 4. She does not explain how that alleged assault impacts her claims against Warn, or his claims against her. *See id.*

[5] Warn's Motion to Deem Defendant Served (ECF No. 9) is **GRANTED**. Sears has answered the Amended Complaint, and she did not invoke lack of personal jurisdiction or insufficient service of process as grounds for dismissal under Rule 12(b)(2) or (5), respectively. Thus, she has waived these defenses. *See* Fed. R. Civ. P. 12(h).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted). The court, however, is not required to accept unsupported legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002) (observing the "long-standing practice" that courts should "construe pro se pleadings liberally").

## DISCUSSION

Sears' Motion to Dismiss is largely devoid of legal argument. *See* ECF No. 6 at 1. She identifies Rule 12(b)(6) as the basis for dismissal, noting that she seeks "dismissal based on failure to state a cause of action." *Id.* at 3. She states that she was under "no legal duty" owed to Warn, and that there is a "lack of sufficient evidence that a legal duty" was owed. *Id.* She characterizes Warn's allegations as "conclusory," which are "insufficient to state" a plausible claim for relief. *Id.* She also identifies additional defenses to Warn's claims, namely that the Agreement was

ambiguous, indefinite, marked by "[m]utual [m]istakes (12-31-2021)," "[m]utual rescission between parties (6/24/2022)," "impossibility, impracticality and frustration of purpose . . . during the COVID pandemic era," and Warn's "failure to [n]otify of a [b]reach of [c]ontract prior to May 22, 2023." *Id.* at 3-4. Sears further lists "mitigating circumstances," which include various alleged domestic assaults by Warn, "[d]uress within the scope of the intended pre-negotiated agreement," "[e]motional distress inflicted" on her by Warn, and Warn's alleged eviction of her from his home by physical force on May 22, 2023. .*Id.* at 4-5. That is to say, aside from her argument that Warn's Amended Complaint fails to state a claim, Sears' Motion to Dismiss presents what appear to be affirmative defenses, competing factual allegations, and, quite possibly, additional counterclaims against Warn not included in her Answer.[6]

As noted above, a motion to dismiss is not an occasion for the Court "to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley*, 464 F.3d at 483. Instead, the Court will "test the sufficiency" of Warn's Amended Complaint, *see id.*, to determine whether it states a plausible claim for breach of contract, fraudulent misrepresentation, or breach of fiduciary duty. *See Iqbal*, 556 U.S. at 678.

**Breach of Contract.** To state a claim for breach of contract, a plaintiff must allege sufficient facts to show that (1) the defendant owed a contractual obligation to the plaintiff; and (2) the defendant breached that obligation. *See Yousef v. Trustbank Sav., F.S.B.*, 81 Md. App. 527, 533 (1990) (citing *Continental Masonry v. Verdel Construction Co.*, 279 Md. 476, 480, 369 A.2d 566 (1977)).

---

[6] Sears may wish to add these counterclaims in an amendment to her Answer. *See* Fed. R. Civ. P. 15. If so, the Court will consider the propriety of adding new claims at such time as she seeks leave to amend.

Warn alleges that he and Sears entered a "Financial Agreement" on August 10, 2021, which required Sears to protect and invest his funds, and that she would periodically report on his investment balances while permitting him to withdraw funds "on a quarterly basis." ECF No. 4 ¶¶ 6, 9. He attaches an exhibit to his Amended Complaint—apparently the Agreement in question—which provides that the initial $20,000 provided by Warn to Sears "will be specifically for investment and will be deemed a transaction for such purpose." ECF No. 4 at 6. The Agreement further provides that Sears will give Warn "related documents of transactions thereafter, an initial offering or investment has been reached," and that Warn may "proceed to collect any capital gains and/or rate of return from a bank, stocks, bonds, funds from private entity." *Id.* Under the Agreement, Sears is also obligated to "refund the full amount" back to Warn "if the Rate of Return is rendered without liquidity." *Id.* The Agreement appears to be signed by both parties. *See id.* at 7. Warn's Amended Complaint alleges that he "never received any type of investment account statements or confirmations," *id.* ¶ 16, and that Sears "has not returned any of the money to date." *Id.* ¶ 15. Under the liberal pleading standard applicable to *pro se* complaints, these facts are sufficient to state a plausible claim that Sears owed Warn a contractual duty that she subsequently breached. *See Yousef,* 81 Md. App. at 533.

***Fraudulent Misrepresentations.*** To state a claim for fraud, a plaintiff must allege that (1) a false representation was made, (2) its "falsity was either known to the maker or that the representation as made with such reckless indifference to the truth as to be equivalent to actual knowledge of falsity," (3) the defendant made the representation "for the purpose of defrauding the plaintiff," (4) the plaintiff relied on the representation to his or her detriment, and (5) the plaintiff "actually suffered damage directly resulting from the representation." *Swinson v. Lords Landing Vill. Condo.*, 360 Md. 462, 476 (2000). Under Rule 9, a plaintiff alleging fraud must

7

"state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Warn alleges that Sears made numerous representations that can be characterized as false, all of which were intended to "cajol[e]" him into giving her money. ECF No. 4 ¶ 19. These include Sears' assertion that "she had invested her own funds" in the investment pool, *id.* ¶ 13, her promise that Warn would "eventually receive [account] statements" that never materialized, *id.* ¶ 16, and her assurance that she "knew individuals who made similar financial moves and invested this way and 'made out big,'" *id.* ¶ 20, among others. Warn also claims, and presents facts to suggest, that Sears made these statements knowing that they were false, and with the intention to defraud him. *See, e.g., id.* ¶ 20 ("[W]hen [Warn] questioned [Sears] about the fact that he never received any type of investment account statements . . . [Sears] put him off by saying that he would eventually receive statements, but the investment account needed to be 'perfected' first. He never received anything and [Sears] never explained what she meant by the word 'perfected.'"); *id.* ¶ 23 ("[Sears'] representations to [Warn] were knowingly false and were made to deceive [him] into parting with his money in what was no more than an investment scam."). Warn has also alleged that Sears' fraudulent misrepresentations directly led to his injury—that is, because of her representations, he gave her nearly half-a-million dollars, which she allegedly has never invested or repaid. *See id.* It is that sum that he seeks in damages. *See id.* Warn has stated a plausible claim for fraud. *See Swinson,* 360 Md. App. at 476.

***Breach of Fiduciary Duty.*** "To establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Plank v. Cherneski,* 469 Md. 548, 599 (2020) (quoting *Froelich v. Erickson,* 96 F. Supp. 2d 507, 526 (D.

Md. 2000)). For his breach of fiduciary duty claim, Warn's Amended Complaint states that as "a result of his relationship" with Sears, she owed him a fiduciary duty to "safeguard his money, invest [it] wisely and provide" him with financial information on demand, in addition to allowing him to "redeem his investments as he saw fit." ECF No. 4 ¶ 33.

These assertions suggest that, at the least, Warn alleges that he held an agency relationship with Sears, whereby he was the principal and she was his agent. It is well accepted that agency relationships are fiduciary relationships because they involve "a duty on the part of the fiduciary" (the agent) "to act for the benefit of the other party to the relation as to matters within the scope of the relation." *Lasater v. Guttmann*, 194 Md. App. 431, 456 (2010) (quoting *Buxton v. Buxton*, 363 Md. 634, 654 (2001)). Put differently, an agency relationship "is a fiduciary relationship by which a party confides to another the management of some business to be transacted in the former's name or on his account, and by which such other assumes to do the business and render an account of it." *Homa v. Friendly Mobile Manor*, 93 Md. App. 337, 359 (1992) (citation omitted).

Here, Warn has alleged sufficient facts for the Court to conclude that the parties were plausibly engaged in an agency relationship, which Sears has plausibly breached by failing to act for the benefit of Warn. *See, e.g.* ECF No. 4 ¶¶ 6-12. The parties' written Agreement also further supports the existence of an agency relationship. *See* ECF No. 4 at 6. Warn and Sears entered the Agreement "for the purpose of investment," *id.*, whereby funds were "entrusted for [a] specific use," i.e., investment, for the benefit of Warn. *See id.* The Amended Complaint alleges that the funds provided to Sears were never actually invested by her, for Warn's benefit or otherwise. *See id.* ¶ 23. Construing his Amended Complaint liberally, as required, *see Pardus*, 551 U.S. at 94, the Court concludes that Warn has stated a claim for breach of fiduciary duty.

\*   \*   \*

9

In sum, Warn's Amended Complaint states a plausible claim for relief on each of the three counts he brings against Sears. That said, the Court's conclusion in no way means to suggest that Warn will prevail on any of his claims. The Court's decision merely means that Warn's claims are not, for now, subject to dismissal. Warn will still need to prove his claims at a later stage in these proceedings, whether at summary judgment or at trial. Sears will have opportunities to defeat Warn's claims at these later proceedings.

**CONCLUSION**

For the foregoing reasons, the Court **ORDERS** that:

1. Warn's Motion to Deem Defendant Served (ECF No. 9) is **GRANTED**;

2. Sears' Motion to Dismiss (ECF No. 6) is **DENIED WITHOUT PREJUDICE**;

3. The Clerk **SHALL** maintain under seal the exhibits to Warn's Original Complaint (ECF Nos. 1-1, 1-2) and his Amended Complaint (ECF No. 4);

4. The Clerk **SHALL** send a copy of this Memorandum Opinion, the accompanying Order, and Warn's Amended Complaint (ECF No. 4) to Sears at the address on the envelope she provided to file her Answer (*see* ECF No. 7-6).

A separate Order will **ISSUE**.

December 18, 2023

**PETER J. MESSITTE**
**U.S. District Judge**